IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AREN TAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-308 (RDA/IDD) |
| ) | |
| COMMONWEALTH ONE FEDERAL ) | |
| CREDIT UNION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on a motion for a Temporary Restraining Order ("TRO") brought by Plaintiff Aren Tau ("Plaintiff"). Dkt. 9. For the reasons that follow, the Court DENIES Plaintiff's motion.

I. BACKGROUND

Plaintiff filed suit in the United States District Court for the District of Columbia on February 18, 2022. Dkt. 1. On its own motion, that court transferred the case to the Eastern District of Virginia on February 28, 2022. On March 7, 2022, Plaintiff filed a motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. 2. He filed an Amended Complaint the same day. Dkt. 3. On March 11, 2022, Plaintiff filed a new motion for a Temporary Restraining Order based on the allegations in his Amended Complaint. Dkt. 5.

In his Amended Complaint, Plaintiff sets forth that he is a Virginia resident who has become homeless due to false imprisonment. Dkt. 3 ¶ 6. He alleges that Defendants, including the Virginia Employment Commission, conspired with law enforcement to harm, humiliate, and deprive him of weekly pandemic unemployment assistance payments by unlawfully refusing to post the weekly electronic transfer payment to his account. *Id.* ¶ 7.

Plaintiff states that he opened a checking and savings account with Commonwealth One Federal Credit Union in Harrisonburg, Virginia in 2009 and that he opened a business account the following year. *Id.* ¶ 8. He also states that in 2018 he opened checking accounts with Parkview Community Credit Union and Dupont Community Credit Union, both in Harrisonburg. *Id.* ¶ 9.

According to Plaintiff, his account at Commonwealth One Federal Credit Union received weekly pandemic unemployment assistance payments from the Virginia Employment Commission, but these authorized funds were "withheld" and "stolen" and not posted to his account. *Id.* ¶ 10. In addition, Commonwealth One Federal Credit Union then allegedly cut off Plaintiff's line of credit. *Id.* Plaintiff avers that the credit union "fully participated" in a "malicious investigation conducted" by City of Alexandria, Virginia police, handing over his personal financial data to law enforcement "for no probable cause." *Id.* He further asserts that he was denied a mortgage loan and subsequent loan applications.

On June 13, 2021, Plaintiff alleges that he attempted to change his designated pandemic unemployment assistance payment account to his account at Parkview Credit Union. He states that this credit union also deliberately refused to post the payments to his account. Plaintiff twice visited the Harrisonburg, Virginia branch of Parkview Credit Union in an effort to solve the issue, but he states that his attempts were unsuccessful. *See id.*

In his Amended Complaint, Plaintiff brings claims alleging deprivation of pandemic assistance weekly payment (Count I); a violation of the Equal Credit Opportunity Act (Count II); a claim for protection of nonpublic personal information under 15 U.S.C. § 6801 (Count III); breach of fiduciary duty (Count IV); emotional harm (Count V); a claim against Commonwealth One Federal Credit Union for failing to refund unauthorized transactions (Count VI); and a claim for violation of the Electronic Funds Transfer Act (Count VII). Plaintiff also invokes 18 U.S.C.

§§ 241 and 242, alleging he is entitled to relief under federal statutes outlawing violations and conspiracies to violate his rights under color of law.

Citing Federal Rule of Civil Procedure 65, Plaintiff seeks an emergency *ex parte* TRO prohibiting Defendants and "all persons acting on their behalf to immediately post monies unlawfully stolen from" him. Dkt. 5 at 1. He also seeks a court order directing Defendants "to cease and halt all surveillance, threatening, harassment, [and] intimidation at public places." *Id.* He states that without immediate relief, he faces "acute and life threatening harm from starvation, illness, public humiliation, and constant threat on the street by unmarked cars[.]" *Id.* at 3. Plaintiff's prayer for relief includes specific requests that the Court order Commonwealth One Credit Union, Parkview Credit Union, and Defendant Virginia Employment Commission to post fifty-two weeks' worth of unemployment assistance payments to his bank account, order the IRS to issue his 2020 income tax refund, and direct federal and local law enforcement and the United States military to stop surveilling him. *Id.* at 7.

## II. STANDARD OF REVIEW

A motion for a temporary restraining order is subject to the requirements of Federal Rule of Civil Procedure 65(b). To obtain this relief without first providing notice to the adverse party, a movant must show specific facts that clearly demonstrate the risk of immediate and irreparable injury if the order does not issue. "While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A grant of temporary injunctive relief requires the movant to establish the same four factors that govern preliminary injunctions: (1) the likelihood of irreparable harm to the plaintiff if the TRO is denied; (2) the likelihood of harm to the defendants if the TRO

is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### III. ANALYSIS

Injunctive relief is an extraordinary remedy that a court may issue in its equitable discretion. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To qualify for injunctive relief through a TRO, Plaintiff must establish that he has sustained "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). "Past wrongs," moreover, "do not in themselves amount to that real and immediate threat of injury." *Simmons*, 47 F.3d at 1382 (quoting *Lyons*, 461 U.S. at 103).

Having reviewed Plaintiff's *ex parte* Motion for a Temporary Restraining Order, the Court makes the following findings of fact and conclusions of law.

#### 1. Likelihood of Irreparable Harm

To begin, both Plaintiff's original Complaint and Amended Complaint are unverified, and Plaintiff submits no declarations or affidavits describing the facts alleged in his TRO Motion. Even if the Amended Complaint were verified, absent from Plaintiff's TRO Motion are plausible allegations that the injuries he identifies would not be compensable in damages. Importantly, "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). As such, this Court is unable to conclude that Plaintiff's alleged monetary harms are irreparable, meaning that those financial losses cannot be repaired through a final judgment awarding Plaintiff past unemployment assistance benefits should he succeed on the merits of his claims. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that

adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). This factor therefore cuts against granting the TRO.

### 2. Harm to Defendants

Defendants, local credit unions and an agency of the Commonwealth of Virginia, would suffer cognizable harm from any TRO as they would be forced into the untenable position of releasing unemployment assistance funds to Plaintiff's accounts without a showing that he is actually untitled to such relief. Eligibility for such programs is carefully circumscribed by statute and regulation, and granting such an extraordinary remedy would cause considerable hardship to Defendants. This factor thus weighs against granting the TRO.

### 3. Likelihood of Success on the Merits

Based on the allegations in the Amended Complaint the Motion for a TRO, Plaintiff has failed to show that he is likely to succeed on the merits of any of his claims. He asserts seven counts for relief, but he marshals no evidence—either in the form of a declaration, affidavit, or otherwise—in support of his TRO Motion. What is more, many of Plaintiff's unusual statements present more as frivolous allegations than factual material that might support any colorable claim for relief. *See, e.g.*, Dkt. 5 at 6 (alleging that Defendants placed a log on the road, causing him to burst his tire, nearly flip his car, and stranding him overnight on May 17, 2021); *id.* (maintaining that Defendants blocked his financial aid "to prevent him from returning back to school"). Based on the nature of the allegations and the lack of any evidentiary support for his TRO Motion, the Court finds that the likelihood of success on the merits factor does not weigh in favor of granting injunctive relief.

4. Public Interest

Finally, the Court looks to whether the public interest would be served by granting a TRO. Plaintiff argues that the incident at issue occurred in and around Washington, D.C., the nation's capital, and that this matter reaches "far and wide across the globe." *Id.* This Court does not discern any basis for finding that the public interest would be served by ordering local credit unions and a state agency to disburse funds Plaintiff has not demonstrated he is entitled to receive, to say nothing of the other extraordinary forms of relief Plaintiff requests. This factor therefore also does not favor granting the TRO.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion (Dkt. 5) is DENIED; and it is

FURTHER ORDERED that Plaintiff's original Motion for a TRO and Preliminary Injunction (Dkt. 2), which was brought before he filed his Amended Complaint, is DENIED as MOOT.

The Clerk is directed to forward copies of this Order to Plaintiff, *pro se*, and to add Commonwealth One Federal Credit Union to the docket as a named defendant.

It is SO ORDERED.

Alexandria, Virginia
April 28, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge